IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL BERNARD BAILEY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:20-cv-00632 |
| RAYMOND MOYER, et al., | ) ) | JUDGE CAMPBELL |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

Plaintiff Michael Bernard Bailey, an inmate of the Riverbend Maximum Security Institution in Nashville, Tennessee, has filed a pro se Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed *in forma pauperis* (IFP). (Doc. No. 2.)

The case is before the Court for ruling on the IFP application and for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Plaintiff has submitted an affidavit of poverty and an inmate trust fund account statement, with a cover letter informing the Court that the account custodian failed to respond to his request for certification of his account balance. (Doc. No. 1 at 16.) These submissions substantially comply with the requirements of Section 1915(a) and demonstrate that Plaintiff lacks the funds to pay the entire filing fee in advance. Accordingly, his IFP application (Doc. No. 2) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350.00 civil filing fee. The warden of the facility in which Plaintiff is currently housed, as custodian of Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10.00. 28 U.S.C. § 1915(b)(2). Payments shall continue until the $350.00 filing fee has been paid in full to the Clerk of Court. 28 U.S.C. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility where Plaintiff is housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a

governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the Complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color

of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**C. Allegations and Claims**

Plaintiff alleges that, on March 11, 2020, he was informed by Counselor Tate that he had a disciplinary hearing later that day concerning two charges of defiance made by Sergeant Maria Heller on January 22, 2020. Plaintiff objected that he had not previously been aware of these defiance charges, nor of the scheduled hearing. Counselor Tate provided Plaintiff with the written charges on March 11 and asked if he had ever received a letter in the mail about the disciplinary hearing, which Plaintiff had not. (Doc. No. 1 at 3–4.)

Sergeant Heller then came to Plaintiff's cell door along with Sergeant Raymond Moyer. Plaintiff complained to Heller that she never informed him that he was being written up for defiance, but both Heller and Tate stated that they would not postpone his disciplinary hearing. Plaintiff then asked Sergeant Moyer if he was going to violate Plaintiff's due process rights by holding the disciplinary hearing that morning, even though Plaintiff had not previously been served with, or even informed of, the write-ups. (*Id.* at 5.) He asked Moyer to review the security footage from January 22, 2020, to confirm that no one came to Plaintiff's cell to serve him with the write-ups, but Moyer declined to do so, and instead offered Plaintiff 20 days of punitive segregation for each charge of defiance in exchange for a plea of guilty to both charges. (*Id.* at 6.) Plaintiff declined this offer, and again asked Moyer if he was going to violate Plaintiff's due process rights by proceeding with the hearing 49 days after the charged misconduct, on less than a day's notice.

4

Moyer responded that because Plaintiff was being disrespectful, he would conduct the disciplinary hearing without Plaintiff being present. (*Id.*)

Sergeant Moyer proceeded to hold the disciplinary hearing in Plaintiff's absence and found him guilty of the charged offenses, purportedly based on Sergeant Heller's testimony as well as her original write-ups, though the minutes of the hearing subsequently provided to Plaintiff did not reflect Heller's testimony. (*Id.* at 7.) Moyer sentenced Plaintiff to 60 days in punitive segregation, 30 days for each of the two disciplinary infractions. (*Id.*)

Plaintiff alleges that Associate Warden Ernest Lewis failed to investigate his appeal from this disciplinary conviction, but simply concurred with Moyer's findings without explanation in violation of prison policy. (*Id.* at 7–8.) A similar charge is leveled against Tennessee Department of Correction (TDOC) Commissioner Tony Parker, who rejected Plaintiff's appeal from Lewis's decision. (*Id.* at 8.) Plaintiff contends that Lewis and Parker failed to review video footage from January 22, 2020, at 10:20 p.m., which would have confirmed that nobody came to Plaintiff's cell that night to serve him with Sergeant Heller's disciplinary write-ups. (*Id.* at 7–8.)

Plaintiff sues Moyer, Lewis, and Parker in their individual and official capacities. (*Id.* at 3.) He claims that his due process rights were violated when, contrary to Supreme Court precedent and governing TDOC policy, Moyer conducted his disciplinary hearing less than 24 hours after he was notified of the charges against him, and in his absence. (*Id.* at 10–13.) He further claims that Lewis and Parker violated his due process rights by failing to adequately investigate his appeal from Moyer's finding of guilt, based on his insistence that he was never served with notice of the disciplinary charges. (*Id.* at 7–8.) As relief, Plaintiff seeks a declaration that his constitutional rights were violated and an award of compensatory and punitive damages. (*Id.* at 14.)

5

**D. Analysis**

Prisoners do not forfeit their due process rights upon entry into the prison. But even where some process is required, a prison inmate is only entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. An inmate's due process rights in connection with a disciplinary hearing are satisfied, therefore, when he receives "notice of the charges, an opportunity to present evidence, and a written decision explaining the finding of guilt." *Tate v. Quintana*, No. 18-6179, 2019 WL 5866596, at *1 (6th Cir. May 22, 2019) (citing *Wolff*, 418 U.S. at 563–66).

Here, while the alleged violations of applicable TDOC policies and procedures are not alone sufficient to support a claim to relief, *see Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995) (stating that mandatory language in prison regulations does not create a liberty interest protected by the due process clause), the complaint nonetheless states a colorable due process claim. In *Wolff*, the Supreme Court held that "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense," and "[a]t least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the [disciplinary hearing]." 418 U.S. at 564. Plaintiff alleges that he was first notified of the charges against him 49 days after the events giving rise to those charges were alleged to have occurred, and less than 24 hours prior to his disciplinary hearing, which Moyer did not even allow him to attend. The due process claim against Defendant Moyer in his individual capacity is thus sufficiently alleged to survive initial review and will be allowed to proceed for further development.

6

However, Plaintiff may not pursue his official-capacity damages claim against Defendant Moyer, nor against Defendants Lewis and Parker. These Defendants are state officials, employed either by the State of Tennessee; TDOC, a state agency; or Riverbend Maximum Security Institution, a state prison that is also an arm of the state. *See Tillman v. Woodall*, No. 3:13-cv-0762, 2013 WL 4049977, at *4 (M.D. Tenn. Aug. 9, 2013). In a suit for damages, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In *Will*, the Supreme Court stated: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* Defendants Moyer, Lewis, and Parker are therefore not suable under Section 1983 in their official capacities. Furthermore, "the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities." *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (citing *Will*, 491 U.S. at 66). As a result, the Complaint fails to state a colorable claim for damages under Section 1983 against these Defendants in their official capacities.

The Complaint likewise fails to assert a colorable due process claim against Lewis and Parker in their individual capacities, based on their failure to appropriately investigate his appeal from Moyer's finding that he was guilty of the defiance charges. While Plaintiff was entitled to the minimal due process protections described above vis-à-vis his disciplinary hearing and conviction, he had no due process right to any appellate review of that conviction. *See Chance v. Compton*, 873 F. Supp. 82, 86 (W.D. Tenn. 1994) ("[A] right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff*."); *Roundtree v. Dunlap*, No. 3:18CV1198, 2019 WL 3252912, at *6 (N.D. Ohio July 19, 2019) ("But a prisoner has no due

process right to appeal a disciplinary conviction."). The claims against Defendants Lewis and Parker must therefore be dismissed, regardless of the capacity in which they are sued.

### III. FURTHER ACTION

As described above, the Court finds that the Complaint states a nonfrivolous claim against Defendant Moyer in his individual capacity. Accordingly, the Clerk is **INSTRUCTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for this Defendant. Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **21 days** of the date of this Order. Upon return of the completed service packet, **PROCESS SHALL ISSUE**.

The Court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE